EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
GOLDEN LAW
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.D., | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| | ) **DEMAND** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA; RAY | ) |
| GARCIA, in his individual capacity; FRAZIER | ) |
| COHEN, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

## INTRODUCTION

1.      Plaintiff I.D. served a sentence in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for nearly five years.

2.      While housed at FCI Dublin, Plaintiff I.D. witnessed and faced constant sexual harassment.

3. Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

4. Plaintiff I.D. is experiencing long-lasting traumatization.

**JURISDICTION AND VENUE**

5. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

6. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff I.D. will list this case on the bi-monthly list that will be submitted to the Court to relate this case to those other cases.

**PARTIES**

9. Plaintiff I.D. was at all times relevant here incarcerated in FCI Dublin.

10. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin ("FCI Dublin"). FCI Dublin was a federal female low-security correctional institution.

11. Defendant Frazier Cohen was a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

12. Defendant Ray Garcia was the Warden and Prison Rape Elimination Act ("PREA") Coordinator during the time of this abuse. He is sued in his individual capacity.

//

//

*I.D. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 2

13. While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff I.D. Plaintiff I.D. was dependent upon Defendant United States for his personal security and necessities.

14. In performing the acts and/or omissions contained herein, Defendants Cohen and Garcia acted under color of federal law, and Plaintiff I.D. is informed and believes each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff I.D. Defendants United States and Garcia knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff I.D. and to his constitutionally and statutorily protected rights. Despite this knowledge, Defendants United States and Garcia failed to take steps to protect Plaintiff I.D. and to ensure his rights to safety from sexual abuse.

**FACTS**

15. Plaintiff I.D. was incarcerated at FCI Dublin from July 2019 to April 2024.

16. Plaintiff I.D. witnessed constant sexual harassment, sexual abuse, and retaliation by many of the officers.

17. Plaintiff I.D., a transgender man, had already experienced targeted harassment in the BOP.

18. Because Plaintiff I.D. saw how prisoners were subjected to retaliation after speaking up about the sexual abuse they witnessed at FCI Dublin, he was terrified to speak up about what he saw and experienced.

19. In 2020, Plaintiff I.D. was living in Housing Unit A with a cellmate.

20. Plaintiff I.D.'s cellmate worked in the kitchen and was supervised by Officer Enrique Chavez.

21. Plaintiff I.D. witnessed Officer Chavez sexually abuse his cellmate.

22. Officer Chavez would bring his cellmate contraband, including food and makeup.

23. He would then come by their cell and order Plaintiff I.D.'s cellmate show him her breasts.

24. She would always comply.

25. On one occasion, Plaintiff I.D. witnessed his roommate coming back from a sexual encounter with Officer Chavez wearing bloody underwear and sobbing.

26. She told Plaintiff I.D. that she did not feel able to say no or resist Officer Chavez.

27. Plaintiff I.D. was rightfully scared and concerned for his cellmate's well-being, but he was also terrified himself that he would face retaliation for reporting the assaults.

28. After Plaintiff I.D.'s cellmate left FCI Dublin, Officer Chavez would stare at Plaintiff I.D. to intimidate him.

29. He made it clear to Plaintiff I.D. that he was not to report what he had seen.

30. In one instance, Officer Chavez approached Plaintiff I.D. and threatened him that he knew better than to speak up or say anything to anyone.

31. This frightened Plaintiff I.D., and as a result, Plaintiff I.D. did not report what he had seen right away.

32. In 2021, Plaintiff I.D. was assigned to work in the kitchen with Officer Chavez and Officer Andrew Jones.

33. Plaintiff I.D. did not have a say in this assignment due to COVID restrictions, and he was forced to work with his cellmate's abuser and the person who had threatened him to be quiet.

34. Plaintiff I.D. was working as a butcher alongside another prisoner.

35. Plaintiff I.D. quickly learned that this prisoner was being sexually abused by Officer Jones.

36. Plaintiff I.D. had flashbacks to his experience with his roommate.

37. While he worked in the butcher shop, he was locked in with Jones and the other prisoner.

38. Officer Jones would take this prisoner to the freezer to sexually assault her, and Plaintiff I.D. was forced to wait outside, locked in the butcher room, while this occurred.

39. When Officer Jones' victim would not show up for work, he would take out his frustration and disappointment on Plaintiff I.D.

40. On these occasions, he was aggressive and angry at Plaintiff I.D. and cursed at him, causing Plaintiff I.D. to fear for his physical safety.

41. On one occasion, Officer Jones forced Plaintiff I.D. to retrieve the prisoner Officer Jones was abusing and force her to report to work.

42. Plaintiff I.D. was scared and conflicted because he did not want to be conscripted into doing Officer Jones' bidding, but he was too frightened to refuse Officer Jones' orders.

43. He ultimately retrieved Officer Jones' victim.

44. When Officer Jones' victim reported to work, she encountered Officer Jones, and when she walked into the butcher shop afterwards, she was crying.

45. Plaintiff I.D. felt uncomfortable and unsafe and ultimately left his job in food service as soon as he was able to avoid Officer Jones' ire.

46. Plaintiff I.D. began taking testosterone shots at FCI Dublin.

47. Prior to COVID restrictions in the prison, when he would receive the shots, he was sent to medical, and nurses would administer the shots.

48. When COVID restrictions occurred, medical staff would come to the unit and call Plaintiff I.D. out of his cell to administer the shots in the laundry room.

49. This made Plaintiff I.D. uncomfortable because there was no door, and he had to expose his buttocks to receive the shot.

50. The lights in the laundry room were frequently off due to the heat of the machines, and sometimes the shots would be administered while the room was dark.

51. At some point in 2021 to 2022, Defendant Cohen began administering the shots.

52. Normally, when the medical staff would administer a testosterone shot, they would ask what side Plaintiff I.D. wanted the shot on and then have him lower his pants on that side so that they could administer the shot.

53. On one occasion, when Defendant Cohen administered Plaintiff I.D.'s testosterone shot, he told Plaintiff I.D. to pull down his pants and rub his own buttocks to indicate the side he wanted the shot on, rather than simply saying which side.

54. This made Plaintiff I.D. uncomfortable.

55. On a second occasion, Defendant Cohen called Plaintiff I.D. to the laundry room to receive a shot.

56. When Plaintiff I.D. arrived, the lights were off in the laundry room.

57. Defendant Cohen had Plaintiff I.D. pull his pants down, and he began rubbing Plaintiff I.D.'s buttocks as he was administering the shot.

58. With the needle still inserted in his buttocks, Defendant Cohen reached his left hand towards Plaintiff I.D.'s vagina.

59. As soon as he touched Plaintiff I.D.'s labia, Plaintiff I.D. jumped and pulled away.

60. Defendant Cohen told Plaintiff I.D. to wait because the needle was still inserted in his buttocks.

61. Plaintiff I.D. clenched his body and waited for Defendant Cohen to remove the needle, fearing the whole time that Defendant Cohen would try to penetrate his vagina or anus with his finger.

62. He was terrified to report the incident and felt like he had been violated, but that nothing would be done about it.

63. From Plaintiff I.D.'s experience, anyone who reported any sexual abuse or harassment at FCI Dublin faced extreme retaliation.

64. He would see prisoners who made PREA reports be sent to the Special Housing Unit ("SHU"), and the units where they resided face retaliatory punishment like more frequent cell searches and pat-down searches.

65. He received the message that not only could he be punished for reporting sexual abuse, but that others in his unit would face retaliation, too.

66. In 2022, Plaintiff I.D. was sent to the SHU for possessing an item that was available in commissary.

67. He had not been to the SHU in Dublin before.

68. Although he was later exonerated, he spent two to three weeks in the SHU.

69. While there, he was subjected to deplorable conditions.

70. The mattresses in the SHU were thinner than mattresses in general housing, and it was difficult and uncomfortable to sleep.

71. Plaintiff I.D. suffered sleep deprivation.

72.    He received cold food at every meal and dirty clothes during clothing exchange.

73.    The toilet did not work, he did not receive sufficient hygiene supplies, and he only got out for recreation about once a week.

74.    The experience was everything that he feared, and it reinforced his decision to keep quiet about the sexual abuse he witnessed and experienced.

75.    When attorneys began coming to FCI Dublin to speak with prisoners about sexual abuse in the prison, Plaintiff I.D. met with them.

76.    Following this meeting, Officer Lewis came into Plaintiff I.D.'s cell and took his mattress. He replaced it with a mattress from the SHU.

77.    Plaintiff I.D. was forced to use this mattress for a week, which again caused him sleep deprivation and distress.

78.    Around that same time, Plaintiff I.D. witnessed another prisoner who made a PREA report get sent to the SHU.

79.    This reinforced for him that even though some attorneys were looking into sexual abuse at the prison, officers were still getting away with sexual abuse and retaliation for reporting the abuse.

80.    He continued to fear what would happen to him if he reported the abuse.

81.    Defendant Garcia was the Warden and PREA coordinator at FCI Dublin.

82.    The sexual abuse that Plaintiff I.D. witnessed and experienced was committed openly and notoriously.

83.    Defendant Garcia knew or should have known that this sexual abuse was occurring.

84.    Despite this, he did nothing to protect the prisoners in FCI Dublin, including Plaintiff I.D.

85.    After Plaintiff I.D. left FCI Dublin, he was sent to a camp.

86.    Plaintiff I.D. suffered extreme anxiety and fear at the camp because of the open environment and unlocked doors.

87.    He had nightmares and flashbacks to Dublin.

88. The camp was also next to a men's facility, and he was terrified of being in such close proximity to men in the open environment of the camp.

89. He begged the mental health providers at the camp to send him to a more secure environment where there was not such free movement and access by corrections officers.

90. He also begged corrections staff to have him moved.

91. He did not feel like anyone took him seriously.

92. In an act of desperation, he threw a pencil case at a corrections officer, knowing that this would likely result in him being moved to a more secure environment.

93. He was moved to FMC Carswell as a result.

94. At Carswell and later at FCI Tallahassee, he was called a "Dublin girl" and subject to mistreatment by staff.

95. Staff routinely "lost" grievances submitted by prisoners from Dublin and openly called them names and talked about them as troublemakers.

96. Plaintiff I.D. felt palpable tension between the staff and prisoners who had transferred from Dublin.

97. On one occasion, Plaintiff I.D. went to retrieve his mail, and a counselor openly said that Plaintiff I.D. was the prisoner she was just talking about, making Plaintiff I.D. feel as if the counselor was gossiping about him or saying something negative about him.

98. This made Plaintiff I.D. feel unsafe.

99. Plaintiff I.D. suffers from anxiety from all that he experienced and witnessed at FCI Dublin.

100. He is scared of men. He has anxiety about being released because he knows that he will encounter men in the community, and he does not know how he will keep himself safe.

101. Plaintiff I.D. has sought mental health care in prison and is trying to work through the anxiety and debilitating trauma.

## EXHAUSTION

102. On March 4, 2025, Plaintiff I.D., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

103.    The BOP acknowledged receipt on March 10, 2025.

104.    The BOP has not substantively responded to his claim.

## EQUITABLE TOLLING

105.    Plaintiff I.D. is entitled to equitable tolling for his FTCA Claim.

106.    The FTCA's statute of limitations is subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015).

107.    Equitable tolling applies when 1) a plaintiff pursued their rights diligently, and 2) extraordinary circumstances prevented timely filing. *Wong v. Beebe*, 732 F. 2d 1030, 1052 (9th Cir. 2013).

108.    Courts have long recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, retaliation, and coercion prevented timely filing. *See* e.g., *Su v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24; *Stoll v. Runyon*, 165 F. 3d 1238, 1242 (9th Cir. 1999) (equitable tolling is appropriate where sexual abuse and post-traumatic stress disorder rendered the plaintiff unable to timely pursue a claim).

109.    Plaintiff I.D. clearly faced extraordinary circumstances, preventing the timely filing of his FTCA claim.

110.    Because Plaintiff I.D. remains incarcerated within the BOP, he continues to experience extraordinary circumstances preventing him from freely accessing the courts or safely pursuing his claims. As long as he remains under BOP custody and control, the threats, coercion, and fear of retaliation continue to silence him.

111.    A court-appointed Special Master confirmed that during the time of Plaintiff I.D.'s incarceration, FCI Dublin lacked a safe and consistent path for women to file sex abuse complaints, that women in custody were intimidated and forced to justify why they needed to complete sex abuse complaints in the first place, and that women who tried to report abuse were

met with retaliation, including solitary confinement and wrongful disciplinary infractions, which extended their incarceration.[1]

112. Plaintiff I.D. has diligently pursued his rights by initiating this claim as soon as he felt some level of safety.

113. Plaintiff I.D. has further demonstrated that he faced extraordinary circumstances preventing him from filing within the ordinary FTCA statutory period.

114. Defendants are not entitled to benefit from their own misconduct. Equitable tolling of Plaintiff I.D.'s statute of limitations prevents this very result. Without the equitable tolling of Plaintiff's statute of limitations, Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting his claim within the statutory period.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.4)

115. Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

116. Plaintiff I.D. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees, Defendants Cohen and Garcia.

117. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

118. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

---

[1] First Report of the Special Master Pursuant to the Court's Order of March 26, 2024, U.S Bureau of Prisons Federal Correctional Institution, Dublin, Submitted by Wendy Still, Special Master U.S. District Court Northern District Court of California, June 5, 2024.

---

*I.D. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 10

119. Their positions as correctional officers and, in Defendant Garcia's case, the Warden and PREA coordinator, were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

120. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

121. Defendant Cohen discriminated against Plaintiff I.D. based on his gender when he sexually abused him by physically subjecting him to sexual acts.

122. Defendant Garcia discriminated against Plaintiff L.O. based on her gender when he failed to protect her from repeated sexual abuse.

123. By these acts, Defendants Cohen and Garcia caused Plaintiff I.D. physical, mental, and emotional injuries as well as injury to his personal dignity.

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendants Cohen and Garcia)**
**(Cal. Civ. Code § 52.4)**

124. Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

125. Plaintiff I.D. brings this claim for gender violence under California Civil Code § 52.4 against Defendants Cohen and Garcia.

126. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

127. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

128. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

129. Plaintiff has a nonfrivolous argument that Defendant Cohen bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

130. Defendant Cohen discriminated against Plaintiff I.D. based on his gender when he sexually abused him by physically subjecting him to sexual acts.

131. By these acts, Defendant Cohen caused Plaintiff I.D. physical, mental, and emotional injuries as well as injury to his personal dignity.

### THIRD CLAIM FOR RELIEF
### SEXUAL ASSAULT
### (against Defendant United States)
### (FTCA; California Common Law)

132. Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

133. Plaintiff I.D. brings this claim for sexual assault under the Federal Tort Claims Act for violation of Plaintiff's rights established by California common law against the United States based on the conduct of its employees Defendants Cohen and Garcia.

134. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

135. Their positions as correctional officers and, in Defendant Garcia's case, the Warden, were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

136. Defendant Cohen violated Plaintiff I.D.'s right to be free from sexual assault by sexually abusing him while he was incarcerated.

137. Defendant Cohen's sexual abuse of Plaintiff I.D. was deeply offensive to his personal dignity and would offend a person of ordinary sensitivity.

138. Defendant Cohen subjected Plaintiff I.D. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff I.D.'s person.

139. Defendant Garcia knew or should have known that Plaintiff E.G. was being sexually abused and failed to protect her despite his duty to do so.

140. By intentionally subjecting Plaintiff I.D. to sexual acts, Defendants Cohen and Garcia acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

141.    By subjecting Plaintiff I.D. to sexual acts, Defendant Cohen caused him to suffer physical, mental, and emotional injuries, as well as injuries to his personal dignity.

**FOURTH CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant Cohen)**
**(California Common Law)**

142.    Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

143.    Plaintiff I.D. brings this claim for sexual assault for violation of Plaintiff's rights established by California common law against Defendant Cohen.

144.    Defendant Cohen violated Plaintiff I.D.'s right to be free from sexual assault by sexually abusing him while he was incarcerated.

145.    Plaintiff has a nonfrivolous argument that Defendant Cohen bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

146.    Defendant Cohen's sexual abuse of Plaintiff I.D. was deeply offensive to his personal dignity and would offend a person of ordinary sensitivity.

147.    Defendant Cohen subjected Plaintiff I.D. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff I.D.'s person.

148.    By intentionally subjecting Plaintiff I.D. to sexual acts, Defendant Cohen acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

149.    By subjecting Plaintiff I.D. to sexual acts, Defendant Cohen caused him to suffer physical, mental, and emotional injuries, as well as injuries to his personal dignity.

**FIFTH CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 1708.5)**

150.    Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

*I.D. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 13

151.    Plaintiff I.D. brings this claim for sexual battery under the Federal Tort Claims Act based on California Civil Code section 1708.5 against the United States for the conduct of its employee, Defendants Cohen and Garcia.

152.    These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

153.    Their positions as correctional officers and, in Defendant Garcia's case, the Warden, were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

154.    Defendant Cohen committed battery against Plaintiff I.D. by sexually abusing him while he was incarcerated as a minimum-security prisoner at FCI Dublin.

155.    The sexual abuse of Plaintiff I.D., a prisoner, was deeply offensive to his personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

156.    Defendant Cohen subjected Plaintiff I.D. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff I.D.'s person.

**SIXTH CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant Cohen)**
**(Cal. Civ. Code § 1708.5)**

157.    Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

158.    Plaintiff I.D. brings this claim for sexual battery for violation of Plaintiff's rights established by California Civil Code section 1708.5 against Defendant Cohen.

159.    Defendant Cohen committed sexual battery against Plaintiff I.D. by sexually abusing him while he was incarcerated as a minimum-security prisoner at FCI Dublin.

160.    Plaintiff has a nonfrivolous argument that Defendant Cohen bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

*I.D. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 14

161. The sexual abuse of Plaintiff I.D., a prisoner, was deeply offensive to his personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

162. Defendant Cohen subjected Plaintiff I.D. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff I.D.'s person.

**SEVENTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant United States)**
**(FTCA; California Common Law)**

163. Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

164. Plaintiff I.D. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of its employees, Defendants Cohen and Garcia.

165. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

166. Their positions as correctional officers and, in Defendant Garcia's case, the Warden, were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

167. Defendant Cohen engaged in outrageous conduct by subjecting Plaintiff I.D. to sexual acts while he was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff I.D. and his power to affect him in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

168. Defendant Cohen's sexual abuse caused Plaintiff I.D. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

169. Defendant Cohen intended to cause Plaintiff I.D. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

### EIGHTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendant Cohen)
### (California Common Law)

170.    Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

171.    Plaintiff I.D. brings this claim for the intentional infliction of emotional distress against Defendant Cohen.

172.    Defendant Cohen engaged in outrageous conduct by subjecting Plaintiff I.D. to sexual acts while he was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff I.D. and his power to affect him in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

173.    Plaintiff I.D. has a nonfrivolous argument that Defendant Cohen bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

174.    Defendant Cohen's sexual abuse caused Plaintiff I.D. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

175.    Defendant Cohen intended to cause Plaintiff I.D. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

### NINTH CLAIM FOR RELIEF
### BANE ACT
### (against all Defendants)
### (FTCA; Cal. Civ. Code § 52.1)

176.    Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

177.    Plaintiff I.D. was in the custody and control of the United States during all relevant times.

178.    Defendants Cohen and Garcia violated Plaintiff I.D.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; his rights under the

California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and his right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

179.    Plaintiff I.D. has a nonfrivolous argument that Defendants Cohen and Garcia bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

180.    Defendant United States, by the actions of its employees Defendants Cohen and Garcia, interfered with Plaintiff I.D.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; his rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and his right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

181.    As a proximate result of these acts, Plaintiff I.D. sustained damage and injury.

### TENTH CLAIM FOR RELIEF
### TRAFFICKING VICTIMS PROTECTION ACT
### (against all Defendants)
### (18 U.S.C. § 1581, *et seq.*)

182.    Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

183.    Defendant Cohen knowingly recruited, enticed, and solicited Plaintiff I.D. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

184.    Defendant Cohen made Plaintiff I.D. engage in sex acts through force and coercion.

185.    Defendants United States and Garcia knew of, or should have reasonably known, that Defendant Cohen was soliciting Plaintiff I.D. in exchange for sex acts, and benefited by failing to protect Plaintiff I.D.

186.    Plaintiff I.D. has a nonfrivolous argument that Defendants Cohen and Garcia bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

187.   This conduct has caused Plaintiff I.D. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and he has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

**ELEVENTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

188.   Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

189.   Defendant Cohen knowingly recruited, enticed, and solicited Plaintiff I.D. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

190.   Defendant Cohen made Plaintiff I.D. engage in sex acts through force and coercion.

191.   Defendants United States and Garcia knew of or should have reasonably known that Defendant Cohen was engaged in these activities and intentionally placed Plaintiff I.D. at greater risk of harm and/or failed to act in a manner that protected Plaintiff I.D. from harm.

192.   Defendant United States employed Defendants Cohen and Garcia, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

193.   This conduct has caused Plaintiff I.D. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**TWELFTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendants Cohen and Garcia)**
**(Cal. Civ. Code § 52.5)**

194.   Plaintiff I.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

195.   Defendant Cohen knowingly recruited, enticed, and solicited Plaintiff I.D. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

196.   Defendant Cohen made Plaintiff I.D. engage in sex acts through force and coercion.

197. Defendant Garcia knew of, or should have reasonably known, that Defendant Cohen was engaged in these activities and intentionally placed Plaintiff I.D. in greater risk of harm and/or failed to act in a manner that protected Plaintiff I.D. from harm.

198. Plaintiff I.D. has a nonfrivolous argument that Defendants Cohen and Garcia bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

199. This conduct has caused Plaintiff I.D. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

### PRAYER FOR RELIEF

200. Plaintiff I.D. prays for judgment against Defendant, and each of them, as follows:

(a) An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff I.D. in an amount to be determined at trial;

(b) An award to Plaintiff I.D. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c) For such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiff I.D. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: March 2, 2026         SIEGEL, YEE, BRUNNER & MEHTA


By:_____
     EmilyRose Johns


GOLDEN LAW


By: /s/ Deborah M. Golden
     Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming

*Attorneys for Plaintiff*